UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC J. ENGBERG,

      Plaintiff,

v.                                             Case No. 8:10-cv-1775-T-23MAP

UNITED STATES DEPARTMENT OF JUSTICE,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff, a freelance journalist, seeks judicial review of the Department of Justice's denial of his Freedom of Information Act ("FOIA") (5 U.S.C. § 552) request for a "Report of Investigation" (ROI) issued by its Office of Professional Responsibility (OPR) pertaining to a former Assistant United States Attorney (AUSA).  The Department of Justice (DOJ) contends a variety of exemptions justify its denial and moves for summary judgment.  After an *in camera* review of the ROI, I agree with the DOJ's application of the specific exemptions and recommend the district judge grant its motion for summary judgment (doc. 9).[1]

      *A.  Background* [2]

      The OPR is tasked with investigating allegations of misconduct involving DOJ attorneys "that relate to the exercise of their authority to investigate, litigate or provide legal advice, as well

---

[1]  The district judge referred the matter to me for a Report and Recommendation (doc. 10).  *See* 28 U.S.C. § 636 and Local Rule 6.01.

[2]  The parties do not dispute the relevant background information as set forth in the DOJ's motion for summary judgment.  *See* doc. 9, pp. 2-3 and doc. 13, p. 2.

as allegations of misconduct by law enforcement personnel when such allegations are related to allegations of attorney misconduct within the jurisdiction of DOJ-OPR." 28 C.F.R. § 0.39a(a)(1); *see also*, doc. 9 (Declaration of Patricia Reiersen ("Reiersen Declaration"), ¶ 3). The OPR, if appropriate, then reports its findings (the ROI) to the responsible Department official (here, the Executive Office for United States Attorneys (EOUSA)). Additionally, the OPR can make recommendations for disciplinary or corrective action. 28 C.F.R. § 0.39a(a)(3).

Engberg submitted a FOIA request to the OPR seeking a copy of the ROI to the EOUSA dated May 15, 2004, relating to the conduct of Jeffrey J. Del Fuoco, a former AUSA previously assigned to the Tampa Office of the United States Attorney for the Middle District of Florida (USAO). *See* doc. 1, Exh. A. In response, the OPR provided Engberg a written response refusing neither confirming or denying the ROI's existence (doc. 1, Exh. B).[3] The OPR explained that "[l]acking an individual's consent, an official acknowledgment of an investigation, or an overriding public interest, even to acknowledge the existence of investigatory records pertaining to an individual would constitute a clearly unwarranted invasion of personal privacy pursuant to 5 U.S.C. § 552(b)(6) and could reasonably be expected to constitute an unwarranted invasion of personal

---

[3] A response neither confirming or denying the existence of records related to a FOIA request is known as a *Glomar* response. *See Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976); *see Office of the Capital Collateral Counsel, N. Region of Fla. v. U.S. Dep't of Justice*, 331 F.3d 799, 802 n.3 (11th Cir. 2003), *citing Phillippi, supra*, ("A Glomar response neither confirms nor denies the existence of the documents sought in the FOIA request. The term has its origin in a case involving a FOIA request for information on the *GLOMAR EXPLORER* submarine-retrieval ship."). Initially, the OPR asserted a *Glomar* response because, as a rule, it does not publicly acknowledge its investigations (Reiersen Declaration, ¶ 9). Per its standard practice, however, OPR now acknowledges the existence of the ROI after another government entity, the Merit Systems Protection Board (MSPB), released a letter from the EOUSA referencing the ROI, which the MSPB provided in response to a separate FOIA request (*id.*, ¶¶ 10-11).

privacy pursuant to 5 U.S.C. § 552(b)(7)(C)" (doc. 1, Exh. B).  According to the DOJ, the ROI included information pertaining to allegations of non-criminal misconduct against three individuals and the investigation related to those allegations encompassed interconnected elements, including numerous local and federal investigations as well as cases involving criminal, civil and administrative proceedings (Reiersen Declaration, ¶ 12).

After receiving the initial response to his FOIA request, Engberg submitted an administrative appeal of the OPR's decision (doc. 1, Exh. D).  Upon consideration, Engberg's appeal was denied and the OPR's action in refusing to confirm or deny the existence of any records responsive to his request was affirmed (*id.*, Exh. E).  Subsequently, Engberg filed the instant action seeking disclosure and release of the information contained in the ROI which he contends was improperly withheld (doc. 1).  Both parties have now moved for summary judgment.  *See* docs. 9, 13.[4]

B.  *Standard of Review*

In the context of a FOIA dispute, the district court conducts a *de novo* review to determine whether the government improperly withheld production of records stemming from a FOIA request. 5 U.S.C. § 552(a)(4)(B).  Generally, once the parties properly identify the pertinent documents in issue, FOIA cases should be handled on motions for summary judgment.  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008).  A motion for summary judgment should be granted where the movant demonstrates no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  As no issues relating to any material fact exist in this case, summary judgment is appropriate.

---

[4]  I subsequently directed the DOJ to file the ROI with Clerk as an *in camera* submission.

## C. Discussion

The FOIA was enacted "to encourage public disclosure of information so citizens may understand what their government is doing." *Office of the Capital Collateral Counsel*, 331 F.3d at 802. The FOIA mandates disclosure of records upon request unless the records fall within one of nine enumerated exemptions listed in 5 U.S.C. § 522(b). *Fla. House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 944 (11th Cir. 1992). "Congress created these exemptions because it realized that legitimate governmental and private interests could be harmed by release of certain types of information." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988) (internal quotation marks and citation omitted). Nonetheless, the FOIA's disclosure provisions are read broadly with its exemptions read narrowly. *Ely v. F.B.I.*, 781 F.2d 1487, 1489 (11th Cir. 1986) (citations omitted). If the court determines a government agency has improperly withheld records, it may order production of any record improperly withheld. 5 U.S.C. § 552(a)(4)(B).

The strong presumption favoring disclosure therefore puts the burden on the government to justify the withholding of any requested documents and remains with the government when it seeks to justify redaction of identifying information in a document as well as withholding of an entire document. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Ely*, 781 F.2d at 1489-90 (stating the "burden is squarely on the government to prove that the information in question is covered by one of the exemptions."). As support for its position in a FOIA action, the government's reliance on "affidavits can be sufficient for summary judgment purposes ... if [the affidavits] provide as accurate a basis for decision as would sanitized indexing, random or representative sampling, *in camera* review, or oral testimony." *Miscavige v. I.R.S.*, 2 F.3d 366, 368 (11th Cir. 1993); *see Adejumobi v. Nat'l Sec. Agency*, 287 Fed. App'x 770, 771 (11th Cir. 2008) ("An agency ordinarily

4

may discharge its burden by filing a declaration of a qualified official regarding the factual basis for

the conclusion of the agency that an exemption applies.").  In this instance, the DOJ relies on the

declaration of Patricia Reiersen, a FOIA specialist with the OPR since November 2007 who is

responsible for processing requests received by the OPR pursuant to the FOIA and the Privacy Act.

In accordance with Reiersen and the EOUSA's assessment, the DOJ cites FOIA exemptions 3, 5,

6, and 7(C) as the bases for withholding the information contained in the ROI.[5]  *See* 5 U.S.C. §

552(b).  After conducting a line-by-line segregability analysis, however, the OPR determined it could

release only one section of the ROI, namely, the OPR's Analytical Framework found on pages 34

and 35 of the ROI (Reiersen Declaration, ¶ 32).  Engberg agrees that portions of the ROI are exempt

pursuant to FOIA exemptions 3 and 6 but disputes that any other exemptions apply and, to the extent

they do, that the public interest in disclosure outweighs the interests protected by the exemptions.

*See* doc. 13.[6]

      *1. Exemption 3*

The DOJ contends, and Engberg concedes, the OPR appropriately withheld information

---

[5]  Initially, the DOJ asserted Exemption 7(A) properly applied to the withheld information.  Exemption 7(A) pertains to records or information compiled for law enforcement purposes the production of which could reasonably be expected to interfere with enforcement proceedings.  5 U.S.C. § 552(b)(7)(A).  Following denial of his appeal of the OPR's decision, Engberg filed a complaint with the OPR alleging professional misconduct against an individual named in the ROI involving events and other individuals identified in the ROI (Reiersen Declaration, ¶ 29).  Since an ongoing investigation related to an individual referred to in the ROI was being conducted at the time Engberg filed the instant complaint, the DOJ argued the information must be withheld pursuant to Exemption 7(A).  Since the investigation has subsequently ceased, the DOJ no longer contends Exemption 7(A) applies.  *See* docs. 16, 17.

[6]  Although the application of exemption 5 largely negates disclosure, given the nature of this Report, I address all the exemptions at issue.

pursuant to Exemption 3.[7]  Under this exemption, information "specifically exempted from disclosure by statute" is protected from disclosure provided that the statute (1) requires the matters be withheld from the public in such a manner as to leave no discretion or (2) establishes specific criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3)(A).  The DOJ contends, and I agree, that the ROI discusses evidence and witnesses presented before a grand jury, discusses investigative details in cases where a grand jury was convened, and includes an excerpt of grand jury testimony (Reiersen Declaration, ¶ 27).  Pursuant to Rule 6, Federal Rule of Criminal Procedure, matters occurring before a grand jury are prohibited from disclosure except in rare instances. Fed. R. Crim. P. 6(e).  For purposes of FOIA Exemption 3, Rule 6 qualifies as a statute.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-69 (D.C. Cir. 1981); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 n.4 (7th Cir. 1998). Accordingly, the DOJ's motion for summary judgment should be granted as to the information withheld under Exemption 3.[8]

### 2. Exemption 5

Exemption 5 exempts from FOIA disclosure any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 "incorporates into FOIA the statutory and common law privileges normally available to a party in civil discovery," including the

---

[7]  Engberg does not address the applicability of Exemption 3 except to say portions of the ROI are exempt pursuant to Exemptions 3 and 6 (doc. 13, p. 1).

[8]  The information appears on pages ii, 3, 5, 22, 23, 24, 36, 44, 45, 51, 54, 61-68, 70-76, and 93 of the ROI (Reiersen Declaration, ¶ 27).

attorney work-product and the deliberative process privilege.  *Miccosukee*, 516 F.3d at 1257; *see*

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  "Work product

protects mental processes of the attorney, while deliberative process covers documents reflecting

advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated."  *Klamath Water Users*, 532 U.S. 8 (internal

citations and quotation marks omitted).

According to the DOJ, information protected from disclosure under Exemption 5 appears on

every page of the ROI, including the cover page and table of contents, except for pages 1, 2, 7, 10,

17, 23, 35, and 71 (Reiersen Declaration, ¶ 25).  The DOJ contends the OPR properly withheld that

information under Exemption 5 because both the work-product doctrine and the deliberative process

privilege apply.  Engberg does not refute, or even address, the applicability of the work-product

doctrine to the information withheld from disclosure.  Instead, he focuses his attack on the

deliberative process privilege.  Since I find the OPR properly withheld the information pursuant to

the deliberative process privilege, I find it unnecessary to address the work-product doctrine as

Engberg's failure to challenge the protection's applicability makes its assertion stand.

The deliberative process privilege protects the quality of the government agency's decision-

making process.  *Miccosukee*, 516 F.3d at 1263.  It "rests on the obvious realization that officials will

not communicate candidly among themselves if each remark is a potential item of discovery and

front page news, and its object is to enhance the quality of agency decisions by protecting open and

frank discussion among those who make them within the Government."  *Klamath Water Users*, 532

U.S. at 8-9 (internal citations and quotation marks omitted).  For the deliberative process privilege

to apply, two requirements must be met; namely, the material must be (1) pre-decisional, *i.e.*,

prepared to assist an agency decision maker in arriving at a decision, and (2) deliberative, *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Micosukee*, 516 F.3d at 1263 (citations and quotation omitted).  Engberg does not dispute the material contained in the ROI is pre-decisional.  Rather, he contends the material is not deliberative and therefore improperly withheld.

Material qualifies as "deliberative" if disclosure of the information would expose an agency's decision-making process in such a way so as to discourage candid discussion within the agency thereby undermining the agency's ability to perform its functions.  *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. National R.R. Passenger Corp.*, 376 F.3d 1270, 1278 (11th Cir. 2004).  For the deliberative-process privilege to apply, "the decision-making process must bear a reasonable nexus to the documents sought."  *Id.* at 1281.

Both requirements are met here.  The ROI contains information exposing intricate details of the OPR's decision-making process, which led to its recommendations to the EOUSA.  According to Reiersen, and as my review indicates, the ROI is as an intra-agency document containing pre-decisional legal analysis regarding the investigation of Del Fuoco and others that the OPR prepared for the disciplinary authority, the EOUSA, which makes the final disciplinary decision if misconduct is found.  *See* Reiersen Declaration, ¶ 22.  Prepared by the OPR, signed by the acting OPR's counsel, and addressed to the then Acting Director of the EOUSA, the document details the OPR's investigation, its findings, its analytical framework, and its recommendations (*id.*, ¶ 21).  The ROI contains the OPR's legal analysis, case strategy, and investigative details as well as applicable standards of conduct implicated in the allegations of misconduct serving as the basis of the OPR investigation (*id.*, ¶ 24).  In addition, the ROI contains information relating to cases and

investigations conducted by the USAO, which the OPR necessarily had to analyze to reach a conclusion as to whether misconduct had occurred with respect to those cases and investigations (*id.*, ¶ 23).  Based on its analysis and findings, the OPR submitted the ROI to the EOUSA prior to the decision on the appropriate mechanism for addressing any misconduct committed by the individuals subject to investigation, to the extent any occurred (*id.*, ¶ 24).  Given the nature of the information contained in the ROI pertaining to and discussing the OPR's analysis and recommendations, the OPR properly withheld the information pursuant to Exemption 5.

Engberg's attempt to separate the withheld information into facts versus opinions fails to establish a sound basis for disclosure of the information.  *See generally Fla. House of Representatives,* 961 F.2d at 947-49 (discussing the distinction between factual and opinion data in the context of Exemption 5).  Indeed, "[e]ven factual material contained in a 'deliberative' document may be withheld pursuant to the privilege where disclosure of the factual material would reveal the deliberative process or where the factual material is so inextricably intertwined with the deliberative material that meaningful segregation is not possible."  *Miccosukee*, 516 F.3d at 1263.  In this instance, I find the factual material contained in the ROI to be intertwined with the deliberative material to such a degree that segregation would prove impossible and, further, disclosure would reveal the OPR's deliberative process.[9]  Accordingly, the information is exempt from disclosure under Exemption 5.

---

[9] My *in camera* review confirms the factual material is inextricably intertwined with deliberative material so as to make meaningful segregation impossible.  The June 17, 2005, letter Engberg obtained from the MPSB discussing Del Fuoco likewise illustrates the interconnectedness of the facts and opinions in the ROI (doc. 13, Exh. A (Shackelford Letter)).

### 3. *Exemption 6*

Exemption 6 excludes from FOIA requests "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[10] 5 U.S.C. § 552(b)(6).   The primary purpose of Exemption 6 is to protect individuals from injury and embarrassment which may result from the unnecessary disclosure of personal information.  *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1196 (11th Cir. 2007).  When considering application of Exemption 6, the court must balance the interest in protecting the privacy of the individual against the importance of the public interest in disclosure.  *See Ray*, 502 U.S. at 175 (stating "the text of the exemption requires the Court to balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny" (internal quotation marks and citation omitted)).   The privacy interest protected by Exemption 6 includes the "individual's interest in avoiding disclosure of personal matters," while the sole public interest involves opening the actions of government agencies to the light of public scrutiny.  *Office of the Capital Collateral Counsel*, 331 F.3d at 802-03.  In weighing the public interest, the particular interest of the requesting party is irrelevant.  *Id.* at 803.

Engberg acknowledges Exemption 6 applies to the ROI.  As Engberg concedes, "[t]he DOJ properly withheld the names, and identifying information, of private individuals contained in the ROI" pursuant to Exemption 6 (doc. 13, p. 5).[11]  Engberg takes issue with the OPR going beyond redaction of the names and identifying information of the private individuals identified in the ROI.

---

[10]  Engberg does not dispute that the ROI is a personnel, medical or similar file.

[11]  Engberg does not elaborate as to what constitutes a "private individual" for purposes of his concession.

Indeed, "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes" information to the public.  5 U.S.C. § 552(a)(2).  According to the DOJ, however, the ROI names or otherwise identifies a number of individuals other than Del Fuoco, including two other USAO staff members subject to the OPR investigation described in the ROI as well as numerous private individuals (Reiersen Declaration, ¶¶ 17-18).  Privacy information pertaining to all three of the individuals subject to the OPR investigation, local law enforcement personnel, defendants and their counsel, family members of individuals named in the ROI, and other private individuals permeates the ROI to such an extent that the OPR withheld the entire document under Exemption 6 (*id.*, ¶ 19).  In fact, as Reiersen's Declaration notes, the names and identifying information of the three individuals subject to investigation appear on every page of the ROI, and the names and identifying information of the private individuals appear throughout the ROI, including the table of contents (*id*, ¶¶ 17, 18).  Engberg does not dispute this but contends redaction of information relating to "private individuals" is sufficient for the OPR to meet the mandates of the FOIA under Exemption 6.

To determine whether withholding information under Exemption 6 relating to any individuals referenced in the ROI is necessary, a court balances the privacy interests of the individuals named in the ROI against the public interest in disclosure of the information.  In balancing the interests under this exemption, the DOJ carries the burden of establishing the balance tips in favor of privacy thereby justifying withholding the information under the exemption. 5 U.S.C. § 552(a)(4)(B). If the DOJ carries its burden of demonstrating disclosure touches upon an area defined in the exemption, Engberg must demonstrate how disclosing the withheld information would serve the core purpose of the FOIA, *i.e.*, contributing substantially to public understanding of the operations or activities

of the government. *News-Press*, 489 F.3d at 1191.

With respect to information relating to the private individuals, which here includes local law enforcement personnel, defendants, their counsel, family members of individuals identified in the ROI, and the other private individuals identified in the ROI, the OPR properly withheld information. Most had no involvement or participation in, and possibly no knowledge of, the OPR's investigation. Indeed, the ROI references many of these individuals merely as a consequence of law enforcement proceedings investigated or conducted by the individuals subject to the OPR investigation. Thus, release of information relating to or otherwise identifying the private individuals would constitute a clearly unwarranted invasion of personal privacy.[12] Moreover, information regarding these individuals reveals little or nothing about the OPR's or the EOUSA's conduct or performance of its statutory duties and, thus, no corresponding public interest would be served by disclosure. *See e.g., Office of the Collateral Counsel*, 331 F.3d at 804 (finding third parties identified in OPR investigative file relating to misconduct by AUSA had privacy interests outweighing the public interest in disclosure). In sum, disclosure of the information relating to these private individuals would constitute a clearly unwarranted invasion of personal privacy and the OPR correctly withheld the information from disclosure under Exemption 6.[13]

The propriety of withholding information under Exemption 6 becomes less clear with respect

---

[12] *See generally Bilderbeek v. U.S. Dep't of Justice*, 2010 WL 1049618 *6 (M.D. Fla. March 22, 2010) (noting numerous courts have held that disclosure of information relating to an individual's involvement in law enforcement proceedings constitutes an unwarranted invasion of personal privacy, albeit under Exemption 7(C), and citing cases holding as much).

[13] Engberg does not address the application of Exemption 6 to the two USAO staff members subject to the OPR investigation. Consequently, I view that omission as a concession that Exemption 6 applies to these individuals.

to Del Fuoco, and information as to him appears on every page of the ROI (Reiersen Declaration, ¶ 19).  Admittedly, though an AUSA is a public official, that fact alone does not render the interest in preserving personal privacy without weight or merit.  *Office of the Capital Collateral Counsel*, 331 F.3d at 803.  In fact, this privacy interest is paramount when, as in the instant action, the information relates to an investigation of a government employee which could lead to discipline or censure.  *See Hunt v. F.B.I.*, 972 F.2d 286, 288 (9th Cir. 1992) ("A government employee generally has a privacy interest in any file that reports on an investigation that could lead to the employee's discipline or censure.").  Given that, Del Fuoco has a strong privacy interest in the information contained in the ROI.

Nonetheless, Del Fuoco's privacy interest is outweighed by the public interest in disclosure.[14] When a government official's actions constitute a violation of the public trust, courts favor disclosure.  *Cochran*, 770 F.2d at 956.  That said, the difficulty here is parsing Del Fuoco's material from exemption-covered material.  Such an exercise, from the perspective of my *in camera* review, would be difficult, if not impossible.  In the end, disclosing the withheld information must serve the core purpose of the FOIA, *i.e.*, contributing substantially to public understanding of the operations or activities of the government.  *News-Press*, 489 F.3d at 1191.  I find it difficult to conclude that parsing Del Fuoco's information, assuming it were possible, would add to the public's understanding given the information already disclosed in the Shackelford Letter.  That document states the EOUSA "considered the role that is entrusted to an AUSA, the public trust that must be protected, and the prominence of the position of AUSA;" found "that the role of an AUSA is an extremely prominent

---

[14]  Even if the Court finds the balance of Del Fuoco's privacy interest versus the public interest equal, "the court should tilt the balance in favor of disclosure" under Exemption 6. *Cochran v. United States*, 770 F.2d 949, 955 (11th Cir. 1985).

13

position in which even non-supervisory AUSAs must play an important role to protect the integrity of the system and the public trust;" and determined Del Fuoco had "substantially and negatively impacted [his] ability to perform at a satisfactory level in the USAO" and had "seriously undermined the trust of the USAO, and negatively impacted the reputation of the USAO in the law enforcement community" by his conduct as detailed therein (Shackelford Letter, pp. 10-11).   In reaching this conclusion, the EOUSA relied on information pertaining to Del Fuoco contained in the ROI (*id.*, pp. 1-9).   Given the infeasibility of segregating Del Fuoco's information contained in the ROI, the DOJ properly withheld that information under Exemption 6.

####### *4.  Exemption 7(C)*

Exemption (7)(C) exempts from disclosure records or information compiled for law enforcement purposes to the extent that the production of such records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Though similar to the language articulated under Exemption 6, the language used in Exemption 7(C) is somewhat broader.  *U. S. Dep't of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 756 (1989).  Notably, Exemption 7(C) omits the term "clearly" as to the invasion of privacy element and encompasses any disclosure that "could reasonably be expected to constitute" an invasion of privacy rather than "would constitute" an invasion of privacy.  *Id.* Notwithstanding, even though the government's burden in demonstrating the requisite invasion of privacy supporting an Exemption 6 claim is heavier than the burden under Exemption 7(C), *Ray*, 502 U.S. at 172, courts should similarly conduct a balancing test between the personal interest in privacy and the public interest in disclosure. *Ely*, 781 F.2d at 1490.

As an initial matter, the parties dispute whether the information withheld pursuant to

Exemption 7(C) consists of information "compiled for law enforcement purposes."  Under Exemption 7(C), information "compiled for law enforcement purposes" does not include internal agency investigations where an agency, acting as the employer, merely supervises or monitors its own employees.  *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 947 (D.C. Cir. 1998).  Rather, an agency's investigation of its own employee which focuses directly on specifically alleged illegal acts, illegal acts of particular identified officials, or acts which could, if proved, result in civil or criminal penalties constitutes information compiled for law enforcement purposes pursuant to Exemption 7(C).  *Id.* (quoting *Stern v. F.B.I.*, 737 F.2d 84, 89 (D.C. Cir. 1984)); *Cappabianca v. Comm'r, U.S. Customs Serv.*, 847 F. Supp. 1558, 1565 (M.D. Fla. 1994).

The OPR is tasked with receiving, reviewing, investigating and referring for appropriate action allegations of misconduct involving DOJ attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice.  28 C.F.R. § 0.39a(a)(1).  Further, the OPR must report to the responsible DOJ official the results of inquiries and investigations and, when appropriate, provide recommendations for disciplinary and other corrective action.  *Id.* at § 0.39a(a)(3).  Consistent with these requirements, the OPR investigated allegations of misconduct against identified staff members of the USAO relating to non-criminal conduct which may have resulted in civil sanctions if proved.  As a result of this investigation, the OPR submitted the ROI to the EOUSA.  The OPR did not generate the ROI as a consequence of any general supervisory or monitoring function of the OPR.  Rather, it conducted an investigation, and thereby created the ROI, in determining whether specific USAO staff members committed any sanctionable misconduct.  As such, the information contained in the ROI constitutes information "compiled for law enforcement purposes" under Exemption 7(C).

Since I find the information sought constitutes law enforcement records, the analysis turns now to balancing the individuals' interest in privacy against the public's interest in disclosure to determine whether an unwarranted invasion of personal privacy could reasonably be expected. *See* 5 U.S.C. 552(b)(7)(C); *Cappabianca*, 847 F. Supp. at 1566. Given the findings under the more stringent requirements of Exemption 6, I find the same outcome is warranted under the less exacting standard of Exemption 7(C).

*D.  Conclusion*

For the foregoing reasons, it is hereby

RECOMMENDED:

1.  The DOJ's motion for summary judgment (doc. 9) be granted.

2.  Engberg's cross-motion for summary judgment (doc. 13) be denied.

IT IS SO REPORTED in Tampa, Florida, on August 12, 2011.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:    The Honorable Steven D. Merryday
       Counsel of Record

16